**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**MARSHA SYKES AND
CHIRSTOPHER SYKES**                                                                                             **PLAINTIFFS**

**v.**                                                     **CIVIL ACTION NO.: 3:23-CV-00291-MPM-RP**

**KUVERA PARTNERS, INC.
D/B/A HOLLYWOOD WAX MUSEUM**                                               **DEFENDANT**

**ORDER**

This cause comes before the court on the motion of defendant Kuvera Partners, Inc. d/b/a Hollywood Max Museum, to dismiss this action for lack of personal jurisdiction. Plaintiffs Marsha and Christopher Sykes have responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, concludes that the motion is well taken and should be granted.

This is a personal injury action arising out of an accident that allegedly occurred on March 17, 2023, when plaintiff Marsha Sykes fell while visiting The Castle of Chaos amusement attraction in Pigeon Forge, Tennessee. (Complaint, Dkt. #1). More specifically, plaintiffs allege that while Sykes was at the Tennessee facility, she was "shocked and scared" by an employee of the attraction, which caused her to fall and break her leg or ankle. (Dkt. #1 at ¶ V). In seeking recovery for these injuries, plaintiffs chose to sue defendant Kuvera Partners, Inc. based upon their allegation that "[s]aid corporation owns and operates wax museums for entertainment in various states, including one in Pigeon Forge, Tennessee, where the events complained of in this cause of action occurred." [Complaint at 1].

1

For its part, however, defendant denies that it is, in fact, the owner of the museum in question, arguing in its brief that:

> Plaintiffs incorrectly named Kuvera Partners, Inc. as "d/b/a Hollywood Wax Museum", mistakenly asserting that it is the owner of the Pigeon Forge, Tennessee premises, "where the events complained of in this cause of action occurred." *Id.* at ¶ III. However, Kuvera Partners, Inc., does not own, operate, maintain or lease the Hollywood Wax Museum, the Castle of Chaos, or Outbreak, the attractions where the events alleged in Plaintiffs' Complaint allegedly occurred. Moreover, Kuvera Partners, Inc., is not the licensed business operator and does not employ or supervise the individuals working at those attractions, including the specific individuals referenced in Paragraph V. of the Complaint. *Id.* at paragraphs 13 and 14.

[Brief at 2]. In support of these arguments, defendant cites the affidavit of its managing partner Raubi Sundher, who further asserts in his affidavit that his company is a California one which conducts no business in Mississippi. [Exhibit "A" at 1-2].

This court notes that defendant has asserted motions to dismiss both for lack of personal jurisdiction under Rule 12(b)(2) and for failure to state a claim under Rule 12(b)(6). Sundher's affidavit does not constitute competent evidence for the purposes of defendant's 12(b)(6) motion to dismiss since, in considering such motions, this court is limited to the allegations of the complaint and any exhibits attached to it. *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.,* 355 F.3d 370, 375 (5th Cir. 2004). A Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction is different. When a nonresident defendant files a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident defendant. *Adams v. Unione Mediterranea Di Sicurta*, 220 F.3d 659, 667 (5th Cir. 2000). To resolve the jurisdictional issue, the court may receive "any combination of the recognized methods of discovery." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008). But "on a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true,

and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a prima facie case for personal jurisdiction exists." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).

It is thus apparent that defendant has properly relied upon Sundher's affidavit in support of its Rule 12(b)(2) motion to dismiss, and, in response to this affidavit, this court believes that plaintiffs should have sought jurisdictional discovery. In that discovery, plaintiffs could have deposed one of defendant's corporate representatives and thereby presented this court with *actual facts* regarding exactly what sort of business Kuvera Partners, Inc. is engaged in and what its relationship to the wax museum at issue in this case is. Instead of such discovery, plaintiffs cite defendant's website, which they describe as follows:

> Although the Defendant has submitted an affidavit denying any ownership or lease of the property where Plaintiff, Marsha Sykes, was injured, and has denied employment of relevant employees, it admits in its affidavit that it manages properties of this type and its published website confirms that it controls the specific attractions where Plaintiff, Marsha Sykes, was injured. In fact, the counter-affidavit of Plaintiff, Marsha Sykes, attaches various pages and screenshots from Defendant's own website which clearly show that Kuvera was marketing and soliciting customers from Mississippi and other states to attend its amusement park in Pigeon Forge, Tennessee and that Kuvera was actively recruiting employees for the Pigeon Forge, Tennessee amusement park where Plaintiff, Marsha Sykes, was injured. Mrs. Sykes' affidavit further attaches correspondence where the insured entity is identified as "Kuvera Partners, Inc. dba Hollywood Wax Museum."
> The website located at www.kuverapartners.com includes a page titled "Join Our Team" which specifically states: "We are looking for talented people who connect with our Core Values and want a long-term work family. . . . Take a peek at what you'd be part of as a Kuvera Team Member, and then explore open positions." The web page includes links to Pigeon Forge, Tennessee attractions including HollywoodWaxEntertainment.com, HollywoodWaxMuseum.com and OutBreakZombieAttraction.com and provides information for open employment positions at those particular attractions. These are the specific attractions in Pigeon Forge, Tennessee, where Marsha Sykes was injured as stated in her Complaint and her affidavit attached to the response in opposition to Defendant's motion to dismiss. If potential employees are invited to be a "Kuvera Team Member," it stands to reason that Kuvera Partners, Inc. dba Hollywood Wax Museum recruited or hired the employees whose conduct is at issue, and Kuvera is a proper Defendant in this action.

[Brief at 3-4].

While this court finds much of the website evidence cited by plaintiffs to be suggestive of some form of business relationship between defendant and the events in this case, it believes that, in response to Sundher's affidavit, they should have sought jurisdictional discovery so that targeted questions in this regard could be asked of defendant's corporate representative. In so stating, this court notes that it is rather uncomfortable with attempting to decipher the exact nature of defendant's business based solely on its website. In a case where plaintiffs have the burden of proof on an issue and yet do not use the discovery tools available to them to meet that burden, this court is uncomfortable in resorting to less traditional forms of record evidence, such as websites. While this court's ruling today is not based on these concerns, they do inform its evaluation of the sparse factual record on many points.

Ultimately, however, this court concludes that it lacks jurisdiction over defendant based solely upon established jurisdictional principles, which it will presently discuss. It is well-settled that the party who attempts to invoke the jurisdiction of the court bears the burden of establishing a *prima facie* case of personal jurisdiction over each defendant. *D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.,* 754 F.2d 542, 545 (5th Cir. 1985); *Lofton v. Turbine Design, Inc.,* 100 F. Supp. 2d 404, 407 (N.D. Miss. 2000). Personal jurisdiction over a defendant can be exercised to the same extent that a state court in this forum could. The reach of such jurisdiction is limited by the state's applicable long-arm statute as well as the due process requirements of the Fourteenth Amendment. *Tellus Operating Group, LLC v. R & D Pipe Company,* 377 F. Supp. 2d 604, 606 (S.D. Miss. 2005) (internal citation omitted). Under these due process requirements, the contacts with the forum state "must be such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *World-Wide Volkswagen Corp. v.*

*Woodson*, 444 U.S. 286, 292 (1980). The plaintiff must show that defendant "purposefully avail[ed] [themselves] of the privilege of conducting activities within [Mississippi], thus invoking the benefits and protections of its laws." *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 109 (1987) (citation omitted).

In order for a Mississippi court to exercise personal jurisdiction over a non-resident defendant, the plaintiff must first demonstrate that the defendant falls within one of the three prongs of the Mississippi long-arm statute. *Yatham v. Young,* 912 So. 2d 467 (Miss. 2005). These include the "doing business," "contract," and "tort" prongs of the state's long-arm statute. Miss. Code Ann. § 13-3-57 (2007). After the plaintiff makes this initial showing, he must then demonstrate that an exercise of personal jurisdiction would be permissible under the Fourteenth Amendment of the United States Constitution. *Allred v. Moore & Peterson,* 117 F.3d 278, 281 (5th Cir. 1997), cert. denied, 522 U.S. 1048 (1998). Mississippi's Long-Arm Statute is not coextensive with federal due process, and an analysis of the scope of the statute is thus required when a defendant challenges the court's exercise of personal jurisdiction. *Allred,* 177 F.3d at 282.

While the above principles can often be difficult to apply, this court concludes that there is one fact in this case which makes it an easy one to decide: namely, that general, and not specific, jurisdiction applies here. In so stating, this court notes that the United States Supreme Court has divided personal jurisdiction into two types—specific or "conduct-linked" jurisdiction and general or "all-purpose" jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 122, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014); *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018). The former depends on a connection between the forum state and the underlying controversy, permitting courts to exercise jurisdiction over a nonresident defendant when that defendant has "purposefully directed" his activities at the forum state "*and* the litigation results

from alleged injuries that arise out of or relate to those activities." *Burger King Corp.*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (emphasis added); *see also Goodyear Dunlop Tires Operations S.A. v. Brown*, 564 U.S. 915, 919, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011).

Thus, specific jurisdiction is a claim-specific inquiry and applies in cases where the defendant's forum-related activities give rise to the facts that form the basis of the lawsuit. General jurisdiction, by contrast, is available "even if the nonresident defendant's contacts with the forum state are not directly related to the cause of action." *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994). In cases, such as this one, where general jurisdiction applies, the Due Process Clause requires that defendant have "continuous and systematic" contacts with this forum; merely having substantial contacts with a forum cannot provide a basis for general jurisdiction consistent with due process. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984).

In this court's experience, it is exceedingly difficult for plaintiffs to meet the "systematic and continuous" test set forth in *Helicopteros*, and the Sykes do not even attempt to argue that they are able to do so here. To the contrary, while defendant clearly argues in its brief that this case is a proper one for the application of general jurisdiction, [brief at 9-10] plaintiffs ignore general jurisdiction as an issue altogether and assert that they are able to meet the less stringent specific jurisdiction test. Indeed, the words "general jurisdiction" are nowhere to be found in plaintiffs' brief, as if ignoring this unhelpfully stringent doctrine will make it go away.

This court notes for the record that it finds defendant's arguments more persuasive on the specific jurisdiction issue as well, for reasons which it will briefly note. In their brief, plaintiffs argue that tickets to wax museums were essentially "products" which defendant sold on its website, and they therefore cite certain case law finding specific personal jurisdiction to be

6

present in cases where online retailers sold products to Mississippi residents. *See, e.g. Fitch v. Wine Express Inc.,* 297 So. 3d 224 (Miss. 2020). It seems clear to this court, however, that in this case, the "product" in question was plaintiff being allowed to visit a museum located in Tennessee, with any tickets sold to Mississippians merely serving as a form of license to go to that state and use that product there. This is a far cry indeed from a retailer shipping a product to Mississippi to be used here. Indeed, this court notes for the record that plaintiffs do not even allege that Marsha bought her ticket to the Castle of Chaos amusement park online (merely that she learned of it there), and the negligence which she claims caused her injuries clearly occurred in Tennessee. This court therefore does not regard this case as a proper one for the application of specific jurisdiction.

Having said that, this court does not intend to "fall in the trap" of analyzing this as a specific jurisdiction case, since it seems clear that it is a proper one for the application of general jurisdiction. In so stating, this court notes that its own research reveals that federal courts have repeatedly held that plaintiffs who were injured at out-of-state theme parks and then filed suit in their home states had to demonstrate that the "systematic and continuous" test for general jurisdiction was met. In *Capizzano v. Walt Disney World Co.,* 826 F. Supp. 53, 54–55 (D.R.I. 1993), for example, a Rhode Island district court considered claims by a local resident arising from an injury which she sustained in Disney World in Florida. In concluding that general jurisdiction applied under these facts, the Rhode Island court wrote that:

> In this case, general, not specific, jurisdictional principles must apply to Disney World since the subject matter of this action did not "arise out of" defendant's activities in Rhode Island. *See generally Marino v. Hyatt Corp.,* 793 F.2d 427, 428–30 (1st Cir.1986). Plaintiff concedes this point. Therefore, Due Process requires that defendant have "continuous and systematic" contacts with this forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). Merely having substantial contacts with a forum cannot provide a basis for general jurisdiction consistent with Due Process.

*Capizzano,* 826 F. Supp. at 55.

As quoted above, the applicability of general jurisdiction was clear enough in *Capizzano* that the plaintiff conceded the point, and it seems similarly plain to this court that plaintiffs' claims arising out of her injury at a Tennessee museum did not arise out of any ticket sales which defendant may (or may not) have made to Mississippi residents.[1] In so stating, this court notes that the district court in *Capizzano* found personal jurisdiction lacking over Disney in Rhode Island even though its marketing efforts in that state were far more extensive than anything defendant is alleged to have done in Mississippi. These marketing efforts by Disney included "providing vacation packages to local travel agents, national advertisements that were distributed in Rhode Island, allowing various national businesses to use its name in their promotions, and conducting two publicity tours in [Rhode Island]." *Capizzano*, 826 F. Supp. at 55. Without question, organizing "publicity tours" in a particular state is a far more targeted contact with that state than simply maintaining a website accessible to residents of all fifty states, even if tickets are sold on that website.

This court notes that, in *Orgeron v. Opryland, U.S.A*., 1993 WL 8306, at *1 (E.D. La. Jan. 12, 1993), a Louisiana district court considered slip and fall claims by a Louisiana couple, arising out of the wife's accident at Opryland in Nashville, Tennessee. In concluding that general, not specific, jurisdiction applied under those facts, the Louisiana judge wrote that:

> Because Mrs. Orgeron's injury did not arise out of Opryland's advertising and other contacts with Louisiana, specific jurisdiction does not lie. Personal injuries simply do not "arise" out of advertising campaigns. *See, e.g., Pedelahore v. Astropark, Inc.,* 745 F.2d 346, 348–49 (5th Cir.1984) (court has general jurisdiction over out-of-state theme park in personal injury suit, not specific jurisdiction).

---

[1] In noting the uncertainty in this regard, this court reiterates that plaintiffs failed to conduct jurisdictional discovery which might have clarified this point.

*Orgeron*, 1993 WL 8306, at *3. In the court's view, *Orgeron*'s observation that "[p]ersonal injuries simply do not 'arise' out of advertising campaigns" applies equally to online ticket sales, particularly when, as here, the plaintiff does not even contend that she bought her tickets online.

This court believes that the jurisdictional issues in this case might be closer if it involved breach of contract claims that defendant had failed to live up to the ticket purchase agreement, but, even then, plaintiffs would need to confront the fact that the tickets in this case were purchased in Tennessee, not Mississippi. As it stands, this court is simply confronted with alleged negligence by one of defendant's employees in Tennessee which "shocked and scared" plaintiff into injuring herself after she had bought tickets to the facility in that state. This court can not even discern a coherent argument for the application of specific jurisdiction under these facts, and the fact that Christopher Sykes asserts loss of consortium claims does not alter this conclusion. In so stating, this court notes that there were claims by the spouse in *Orgeron* as well (which could only have been loss of consortium claims), and the district court in that case gave no indication that this impacted its jurisdictional analysis. This seems quite proper, considering that loss of consortium claims are purely *derivative* claims which are routinely asserted in personal injury actions.

This court is likewise unpersuaded that plaintiff's allegations that she "contracted a bone infection as a result of the initial break" alters the analysis, since this is an injury which clearly resulted from the accident in Tennessee, not Mississippi. Thus, even assuming for the sake of argument that plaintiff is correct that this allegation helps her meet the requirements of Mississippi's long-arm statute, it is clearly insufficient to allow her to avoid the application of general jurisdiction. Indeed, plaintiff does not even argue that it does in her briefing, and, once again, she offers no arguments that the "systematic and continuous" test for general jurisdiction

9

is met in this case. Thus, plaintiff does not even provide the sort of arguments which might allow her to establish a *prima facie* case for personal jurisdiction in this case, instead choosing to ignore the general jurisdiction issue altogether. Needless to say, litigants do not win arguments by ignoring the applicable legal principles.

This court notes that, in the *Pedelahore* decision cited in *Orgeron*, the Fifth Circuit did conclude that "[t]he contacts of Astropark within the State of Louisiana were patently continuous and systematic," thereby allowing the plaintiff to meet even the stringent test for general jurisdiction. *Pedelahore*, 745 F.2d at 348. In so holding, the Fifth Circuit pointed to a very close relationship between the Houston theme park and the state of Louisiana,[2] but nothing even remotely of this nature is alleged by plaintiffs to exist between defendant and Mississippi here. It should also be noted that, since *Pedelahore* was decided, the U.S. Supreme Court has considerably tightened the requirements for establishing general jurisdiction, *see, e.g. Daimler AG v. Bauman*, 134 S. Ct. 746, 753, 187 L. Ed. 2d 624 (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011), and it is thus not a foregone conclusion that the Fifth Circuit would find that Astropark was subject to general jurisdiction in

---

[2] Specifically, the Fifth Circuit noted the existence of:
"(1) An advertising program aimed at Louisianians, including the distribution of brochures and thousands of radio and television spots, together with advertisements in local, national, and regional publications, all extolling the wonders of Astroworld and encouraging visitors to attend.
(2) A ticket consignment agreement with all Louisiana travel agencies authorizing those agencies to sell Louisiana residents tickets to Astropark's facilities.
(3) The conducting of a three-day seminar in New Orleans in December 1982 by the Astropark Marketing Department, aimed, *inter alia,* at developing business from Louisiana for the Houston operation.
(4) The appointment of a sales representative with Louisiana as her area of responsibility.
To these active steps by Astropark, Pedelahore adds the results of the efforts. During the years 1981, 1982 and 1983, Louisiana accounted for 10.3%, 9.7%, and 8.0%, respectively, of the total patronage at the amusement park. Only one state, Texas, accounted for more patrons."
*Pedelahore*, 745 F.2d 346, 349 (5th Cir. 1984)

Louisiana today. In any event, the crucial fact for this case is that the Fifth Circuit held that general jurisdiction applied in that case, and, once again, plaintiffs do not even attempt to argue that the defendant here had "systematic and continuous" contacts with Mississippi such as to support a finding of general jurisdiction. This court believes that, even if plaintiffs had so argued, such an argument would clearly lack merit, particularly in light of the U.S. Supreme Court authority cited above. Defendant's motion to dismiss for lack of personal jurisdiction is therefore due to be granted.

It is therefore ordered that defendant's motion to dismiss for lack of personal jurisdiction over it is granted.

A separate judgment will be entered this date, pursuant to Fed. R. Civ. P. 58.

This, the 20th day of February, 2024.

/s/ Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI